IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
APR 13 2021
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES OF AMERICA,
FOR THE USE OF PRECISION AIR
CONDITIONING OF BREVARD, INC.,

        Plaintiff,

v.                                        CIVIL ACTION NO. 4:20-cv-190

THE CINCINNATI INSURANCE COMPANY,

        Defendant.

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant the Cincinnati Insurance Company's ("Cincinnati"), Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 22. The Court finds that a hearing is not necessary. Having reviewed the parties' filings, both matters are ripe for judicial determination. For the reasons stated below, Defendant's Motion is **DENIED**.

### I.    FACTUAL AND PROCEDURAL HISTORY

The following facts taken from Plaintiff Precision Air Conditioning of Brevard, Inc.'s ("Precision Air") Complaint, ECF No. 1, are considered true and cast in the light most favorable to Plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

The United States Army Corps of Engineer ("USACE") awarded Leebcor Services, LLC ("Leebcor"), a contract to design and build a Fire Crash/Rescue Station on Patrick Air Force Base in Florida (the "Project"). ECF No. 1 at ¶ 4; *see also, id.* at Exhibit 1. On June 1, 2017, Leebcor, as principal, and Surety, obtained a payment bond, in the amount of $12,383,350.00, which jointly and severally bound Leebcor and Surety. *Id.* at ¶ 5. The Bond was accepted by the United States. *Id.* at ¶ 6. Then, Leebcor hired Precision as a subcontractor, pursuant to a written Subcontract Agreement, to furnish mechanical contracting labor, services, and materials for the Project. *Id.* at

1

¶¶ 7-8; *see also, id.* at Exhibit 2 ("Subcontract Agreement"). The United States alleges that Leebcor breached its contract because it failed and neglected to pay Precision a sum of $185,417.61, which includes all unpaid due for labor, services, and materials furnished. *Id.* at ¶¶ 9-10.

On October 2, 2020, the United States filed a complaint against Defendant pursuant to the to the Miller Act in the United States District Court for the Middle District of Florida requesting judgment for the sum of $185,417.61. ECF No. 1. On November 16, 2020, Defendant filed a Motion to Transfer Venue alleging that the Subcontract Agreement contained a forum selection clause which required transferring the action pursuant to 28 U.S.C. § 140. ECF No. 23. On December 15, 2020, the Honorable U.S. District Judge Paul G. Bryon transferred the action to the U.S. District Court for the Eastern District of Virginia, Newport News Division. ECF No. 36.

On November 16, 2020, Defendant also filed the instant Motion to Dismiss Plaintiff's Complaint. ECF No. 22. On November 24, 2020, Plaintiff responded in opposition. ECF No. 27. On March 29, 2021, Defendant replied. ECF No. 50.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. The United States Supreme Court has stated that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Specifically, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Moreover, at the motion to dismiss stage, the court is bound to accept all of the factual allegations in the complaint as true. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.* Assessing the claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.)). In considering a Rule 12(b)(6) motion to dismiss, the Court cannot consider "matters outside the pleadings" without converting the motion to a summary judgment. Fed. R. Civ. P. 12(d). Nonetheless, the Court may still "consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *see also* Fed. R. Civ. P. 10(c).

### III. DISCUSSION

#### A. Choice of Law

As an initial matter, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Precision is a Florida corporation and maintains its principal place of business in Florida. ECF No. 1 at ¶ 1. Cincinnati Insurance Company is an Ohio company that maintains its principal place of business in Fairfield, Ohio. *Id.* at ¶ 2. The amount in controversy exceeds $75,000. *Id.* at ¶ 9. In a diversity action, district courts apply federal procedural law and state substantive law. *See Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996). Federal courts sitting in diversity jurisdiction apply the choice of law rules in the state in which it sits. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (noting that forum state's choice of law rules is substantive).

Generally, when an action brought under diversity jurisdiction is transferred from one federal district to another pursuant to 28 U.S.C. § 1404(a), as has happened here, the law of the state of the transferor court governs. *Van Dusen v. Barrack*, 376 U.S. 612, at 627 (1964). However, an exception to the *Van Dusen* rule applies when a Section 1404(a) transfer is made pursuant to a forum selection clause, and in such cases the law of the state of the transferee court is to be

applied. *Freedman v. America Online, Inc.,* 325 F.Supp.2d 638, 651–52 & n. 28 (E.D. Va. 2004); *see also* 17 *Moore's Federal Practice—Civil,* § 111.20[3][a] (2010) (citing *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.,* 855 F.Supp. 627, 631 (S.D.N.Y.1994)); *cf. Volvo Const. Equip. North America, Inc. v. CLM Equip. Co., Inc.,* 386 F.3d 581, 600 (4th Cir. 2004)(noting that the *Van Dusen* rule should not be blindly applied where the result would run counter to the principles justifying the rule).

In this case, because the action has been transferred to a federal court located in Virginia, pursuant to a forum selection clause in the Subcontract, the Court looks to Virginia's choice-of law rules. In Virginia, if a contract includes a choice of law provision, that provision governs. *Paul Business Systems, Inc. v. Canon U.S.A., Inc.,* 240 Va. 337, 397 (1990). "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances...." *Colgan Air, Inc. v. Raytheon Aircraft Co.,* 507 F.3d 270, 275 (4th Cir.2007) (citing *Hitachi Credit Amer. Corp. v. Signet Bank,* 166 F.3d 614, 624 (4th Cir. 1999)); *see also, Hooper v. Musolino,* 234 Va. 558, 566 (1988); *Tate v. Hain,* 181 Va. 402, 410, (1943). The Subcontract Agreement contains a forum selection clause which provides that "[a]ny action instituted for the enforcement of this Agreement shall be resolved only in the federal or state courts of the state of the aforementioned Buyer's office." ECF No. 1 at Exhibit 1 ¶ 24. The Subcontract Agreement further identifies Leebcor as the "Buyer," and "430 McLaws Circle, Suite 201, Williamsburg, Virginia 23185" as the Buyer's office. *Id.* at Exhibit 1; *see also,* ECF No. 36. Therefore, the Court will adhere to the choice of law clause in the Subcontract and apply Virginia law when evaluating its provisions.

## B. The Miller Act

Precision brought a claim under the Miller Act, 40 U.S.C. § 3133, against Cincinnati, the Surety. The Miller Act provides that "[a] person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the [general] contractor furnishing the payment bond," *i.e.*, a sub-subcontractor, such as Precision here, "may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made." 40 U.S.C. § 3133(b)(2); *see also, U.S. ex rel. Thyssenkrupp Safway, Inc. v. Tessa Structures, LLC*, No. 1:10CV512 JCC/JFA, 2011 WL 1627311, at *3 (E.D. Va. Apr. 27, 2011).

"To state a valid Miller Act claim, a plaintiff must prove essentially two elements: (1) it has 'furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131'; and (2) it 'has not been paid in full within 90 days.'" *United States ex rel. Tenn. Valley Marble Holding Co. v. Grunley Constr.*, 433 F.Supp.2d 104, 114 (D.D.C. 2006) (quoting 40 U.S.C. § 3133(b)(1)). The Miller Act is "highly remedial" and, therefore, is entitled to a "liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." *Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co.*, 322 U.S. 102, 107 (1944). Though entitled to liberal construction, "[w]hile the Miller Act is certainly meant to protect those who supply materials for public projects, the statute was not meant to entitle the supplier to more than it is 'justly due.'" *Tenn. Valley Marble*, 433 F.Supp.2d at 114; *see also United States ex rel. Acoustical Concepts, Inc. v. Travelers Cas. and Sur. Co. of America*, 635 F.Supp.2d 434, 439 n. 6 (E.D. Va. 2009) ("Under the prior version of the Miller Act, a subcontractor on a federal

construction project was entitled to the 'sums justly due' for providing labor and materials. *See* 40 U.S.C. § 270(b)(1) (2001). The 2002 amendments to the Miller Act were not intended to change the substance of the Act.").

Precision has alleged sufficient facts to state a claim under the Miller Act. Based on the Complaint, Leebcor hired Precision as a subcontractor, pursuant to the written Subcontract Agreement, to furnish mechanical contracting labor, services, and materials contract for the Fire Crash/Rescue Station on Patrick Air Force Base in Florida (the "Project"). ECF No. 1 at ¶¶ 4-8; *see also, id.* at Exhibit 2 ("Subcontract Agreement"). On June 1, 2017, Leebcor, as principal, and Surety, obtained a payment bond, in the amount of $12,383,350.00, which jointly and severally bound Leebcor and Surety. *Id.* at ¶ 5. Plaintiff then alleges that Leebcor breached the Subcontract Agreement contract because it failed and neglected to pay Precision a sum of $185,417.61, which includes all unpaid due for labor, services, and materials furnished. *Id.* at ¶¶ 9-10. Additionally, Plaintiff alleges that "more than ninety (90) days have expired since Precision last performed work in connection [Subcontract Agreement] for which this specific claim is made against Surety." *Id.* at ¶ 11. Accordingly, the Court finds that Plaintiff has pleaded sufficient facts supporting a claim that is "facial plausibility" and allows court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 678 (2007)).

Therefore, the Motion to Dismiss is **DENIED** on these grounds.

### C. Compliance with the Condition Precedent

However, Defendant alleges that the Court should dismiss the Complaint or, in the alternative, grant a stay because Plaintiff failed to abide by the dispute protocol contained in the Subcontract Agreement between Leebcor and Plaintiff. *See* ECF No. 1 at Exhibit 1, p. 9 ¶ 14. The dispute protocol provides as follows:

> Any dispute arising here under shall first be resolved by taking the following steps *where a successive step is taken if the issue is not resolved at the preceding step*: (1) by the technical and contractual personnel for each party performing this Agreement, (2) by executive management of each party, (3) by mediation, (4) by arbitration if both parties agree or (5) through a court system of competent jurisdiction.

*Id.* (emphasis added). Pursuant to these terms, Defendant alleges that the parties are only permitted to take a "successive step . . . if the issue is not resolved at the preceding step." *Id.* Accordingly, defendant alleges that before Plaintiff can seek relief "through a court system of competent jurisdiction" it must first abide by the "successive step" of resolving the dispute "by mediation." ECF No. 22 at 7. That is, pursuant to the dispute protocol, "if the issue is not resolved . . . by mediation" then the dispute protocol permits Plaintiff to file a lawsuit.

As an initial matter, the Court finds that Cincinnati, as Leebcor's Surety, can invoke the dispute protocol's mediation requirement in the Subcontract Agreement. *See Artistic Stone Crafters v. Safeco Ins. Co.*, 726 F. Supp. 2d 595, 604 (E.D. Va. 2010) (a "surety company's liability is derivative of the contractor's liability to the plaintiff."). "When a contractor who purchases a payment bond from a surety company fails to make timely contractual payments to the subcontractor, the Miller Act creates a federal right of action for a subcontractor to sue the surety company." *Artistic Stone Crafters v. Safeco Ins. Co.*, 726 F. Supp. 2d 595, 604 (E.D. Va. 2010) (citing 40 U.S.C. § 3133). However, the surety company's liability is derivative of the contractor's liability to the plaintiff. *See Global Bldg. Supply, Inc. v. WNH Ltd. P'ship*, 995 F.2d 515 (4th Cir. 1993) (granting summary judgment to surety company and to contractor on underlying claims in Miller Act lawsuit); *see also, United States v. Seaboard Sur. Co.*, 817 F.2d 956, 962 (2d Cir. 1987); *Aurora Painting, Inc. v. Fireman's Fund Ins. Co.*, 832 F.2d 1150, 1153 (9th Cir.1987).

The next question before the Court is whether the dispute protocol of the Subcontract Agreement is a mandatory condition precedent to filing a lawsuit. Stated differently, must Plaintiff

7

await the completion of the dispute resolution process, as detailed in the Subcontract Agreement, before the Plaintiff can show an amount due under the Miller Act?

Plaintiff argues that the dispute resolution clause acts as an "implied waiver" of the Miller Act because the clause, by operation, alters the timing or right to recovery under the Miller Act. ECF No. 27 at 3. Hence, Plaintiff argues that the clause is an unenforceable waiver because it was not a clear and express waiver of Plaintiff's right to sue under the Miller Act. *See U.S. for Use of B's Co. v. Cleveland Elec. Co. of S.C.*, 373 F.2d 585, 588 (4th Cir. 1967) (holding that while the right to sue under the Miller Act may be waived, such waiver must be "clear and express"); *U.S. for Use of DDC Interiors, Inc. v. Dawson Const. Co., Inc.*, 895 F.Supp. 270, 274 (D. Colo. 1995) ("At a minimum, an effective waiver of Miller Act rights must include mention of the Miller Act and unambiguously express intention to waive the rights provided by it."), *aff'd*, 1996 WL 165358 (10th Cir. 1996).

In support of Plaintiff's argument, the Court finds that the Eastern District of Virginia has refused to enforce pre-suit dispute resolution clauses that do not satisfy the Miller Act's explicity waiver requirements. Critically, in *United States on behalf of Kitchens To Go v. John C. Grimberg Co., Inc.*, the district court held that:

> The Surety in this case cannot rely on the Article 15 dispute resolution provision to delay further the claim under the Miller Act for delay damages because that result would also be inconsistent with the text and purpose of the Miller Act. Clearly, the dispute resolution provision would impose an additional condition on the Subcontractor's right to bring a Miller Act suit in contravention of the statutory text which plainly requires only the passage of 90 days before a subcontractor can bring a suit on the payment bond. Nor, is the dispute resolution provision a valid waiver under the Miller Act because the provision was executed before the Subcontractor provided work on the federal project and before the Subcontractor incurred delay costs. Finally, the dispute resolution clause contravenes the purpose of the Miller Act by needlessly delaying the Subcontractor's recovery while denying the Subcontractor a forum in which to adjudicate its rights.

283 F.Supp.3d 476, 485-486 (E.D. Va. 2017). On the other hand, Defendant argues that the Court should follow *MetroPower*. ECF No. 50 at 2; *see United States of America for the Use and Benefit of MetroPower, Inc. d/b/a Macon Power v. Leebcor Services, LLC and The Hartford Fire Insurance Co.*, No. 4:16cv44 (E.D. Va. Sept. 6, 2016). In *MetroPower*, the surety, Hartford Fire Insurance Company, mirrored Leebcor's argument in the instant case in that Hartford similarly argued that the plaintiff's "failure to fulfill the steps of the dispute protocol provided in the Subcontract Agreement" warranted dismissal of plaintiff's claim. *Id.* at 6. In an unpublished opinion, the district Court agreed and held that the plaintiff was required to mediate its dispute prior to filing suit against Leebcor.

Although there are some similarities with the instant case and the *Kitchens to Go*, the Court does identify some notable differences. First, the "Standard Subcontract Terms and Conditions" at issue in *Kitchens to Go* are not identical to those in the case before the Court. *See* Complaint, *United States on Behalf of Kitchens to Go v. John C. Grimberg Co.*, No. 16-991, (E.D. Va. Aug. 2, 2016), ECF No. 1, Ex. A thereto; *see also*, ECF No. 1 at Exhibit 1. Specifically, in *Kitchens to Go,* the clause stated that "disputes arising out of Owner acts, omissions, or responsibilities shall be resolved in accordance with the disputes procedures in the Prime Contract." Accordingly, the *Kitchens to Go* court held that the subcontract's "*general* [dispute resolution] provision" that appeared to vaguely contemplate only a dispute resolution procedure between the prime contractor and the government, [left] the subcontractor with no recourse. *Kitchens to Go,* at 487-88 (emphasis added). Moreover, considering much of the same authority and arguments that Cincinnati presents in this action, *see* ECF Nos. 22, 50, the *Kitchens to Go* court concluded that the "Subcontractor need not await the completion of the dispute resolution proceedings

9

between the Government and the Prime Contractor before the Subcontractor can show an amount due under the Miller Act, and accordingly, it would be inappropriate to enter another stay in this case." *Kitchens To Go* at 488. In reaching that conclusion, the district court explained that Hartford could not rely on the disputes process provision in the subcontract and that other courts addressing similar contractual provisions had declined to stay Miller Act cases. *See id.*

However, and most critically, when the *Kitchens to Go* court examined the legislative history[1] of the Miller Act, the court found that "the Miller Act was not intended to disrupt the dispute resolution procedures between a subcontractor and a prime contractor provided for in a subcontract." *Kitchens To Go* at 487–88; *see also, United States v. Hartford Accident & Indem. Co.*, No. 3:13-CV-0865, 2017 WL 5971833, at *3–4 (M.D. Pa. Dec. 1, 2017). Thus, the *Kitchens to Go,* neither upheld nor declared a blanket prohibition against dispute resolution provisions, such as the one at issue here. Furthermore, *MetroPower* shows that requiring a Contractor and Subcontract to follow agreed dispute resolution protocols does not contravene the Miller Act.

In the instant matter, as detailed above, the dispute resolution clause is more detailed than the provision in *Kitchens to Go* because it provides that any dispute between the prime contractor and subcontractor shall follow the prescribed successive steps. *See* ECF No. 1 at Exhibit 1, p. 9 ¶ 14. That is, the dispute resolution allows the subcontractor to obtain relief. Therefore, although the Court finds that the dispute resolution protocol was not an express waiver of the Miller act, the Court also finds that requiring Plaintiff and

---

[1] *See* H.R. Rep. No. 106–277 at 5 (1999) (noting that in passing the Miller Act, Congress did not intend to "void subcontract provisions requiring arbitration or other alternative methods of resolving disputes .... [T]he bill respects the freedom of the parties to the subcontract to specify means to resolve their disputes."); *see also, United States on behalf of Kitchens To Go v. John C. Grimberg Co.*, 283 F. Supp. 3d 476, 487 (E.D. Va. 2017)

Defendant to abide by the dispute resolution protocol of the Subcontract is consistent with the Miller Act, its legislature history, and case precedent in this district.

### D. Discretion to Stay Proceedings

Having found that the dispute protocol applies, both parties ask that the case be stayed pending the outcome of the ongoing dispute resolution proceedings. ECF Nos. 27, 50. "The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In exercising that discretion, a district court is instructed to "weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936) (explaining that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket."); *see also, Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 335 (4th Cir. 2019). "Proper use of this authority calls for the exercise of judgment which must weigh competing interests and maintain an even balance." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983) (citation and internal quotation marks omitted). To that end, when determining whether to grant a stay, a district court should consider "(1) the length of the requested stay; (2) the hardship or inequity that the movant would face in going forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; and (4) whether a stay would simplify issues and promote judicial economy." *Rajput v. Synchrony*, 221 F. Supp. 3d 607, 609-10 (M.D. Pa. 2016)

The Court will grant the request to stay. First, since stays for an indefinite duration are disfavored, the Court may impose a time frame for dispute resolution protocols to incentivize both parties to proceed efficiently through mediation proceedings.

Accordingly, the Court will impose a twelve (12) month time frame for the parties to abide by the mediation protocols. The Court will also consider requests to continue the time frame, as the Court deems are warranted.

Second, while neither party has claimed hardship or inequity in allowing Plaintiff to proceed with the litigation, both parties have also recognized that a proper remedy in this case is to stay the case pending mediation protocols. *See* ECF No. 27 at 7-10; *see also,* ECF No. 50 at 5. A party seeking to stay proceedings "must justify it by clear and convincing circumstances, and these circumstances must weigh more heavily than the potential harm to the party against whom the stay applies." *King Pharmaceuticals, Inc. v. Lupin LTD*, 403 F.Supp.2d 484, 489 (E.D. Va. 2005) ("[T]he applicant for a stay must make out a clear case of hardship or inequity in being required to go forward ... [o]therwise, a stay is not merited."); *see also, Rishell v. Computer Scis. Corp.*, No. 1:13-CV-931, 2013 WL 11841495, at *1 (E.D. Va. Sept. 13, 2013). Therefore, the Court finds that neither party will be prejudiced by staying proceedings.

Third, the Court also finds that the stay would not inflict injury on the Plaintiff because it provides for an additional opportunity for both parties to settle the case. Thus, Plaintiff will have the opportunity to receive the monetary relief that it seeks. And if the dispute resolution proceedings are unsuccessful, Plaintiff may return to Court to proceed with the litigation.

Finally, allowing both parties to proceed with the dispute resolution protocol would promote judicial economy. In all, in weighing competing interests, the Court grants a stay for twelve (12) months for both parties to proceed with the dispute resolution protocols.

## IV. CONCLUSION

Based on the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 22, is **DENIED**. The Court **STAYS** the litigation for **Twelve (12) Months** so that the parties may mediate their dispute pursuant to Section 14 of the Subcontract Agreement. Additionally, the Court directs both parties to provide the Court with a status report every ninety (90) days while they are in mediation proceedings.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
April 13, 2021

/s/ Raymond A. Jackson
UNITED STATES DISTRICT JUDGE